### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION
### CIVIL ACTION NO. 3:24-CV-00296-DJH-CHL

**QUOC DINH,**                                                                                    **Plaintiff,**

**v.**

**JULIE CAMPBELL, et al.,**                                                                **Defendants.**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on a number of discovery issues. Plaintiff Quoc Dinh ("Dinh") filed a motion for protective order regarding written discovery served by Defendant Tanya Shrout ("Shrout"). (DN 68.) Shrout filed a combined response and motion to compel of her own related to Dinh's written discovery responses that included a request to continue Dinh's deposition (DN 69); Defendants Julie Campbell ("Campbell") and Christopher D. Hunt ("Hunt") joined in Shrout's requested relief (DNs 72, 73, 75, 76). Dinh did not file a response to Shrout's motion to compel or a reply in support of his own motion. Subsequently, Defendants Campbell, Shrout, and Hunt filed a motion to strike an affidavit Dinh attached to his dispositive motion and requested that the Court prohibit Dinh from using the affiant as a witness in this matter on grounds that Dinh had not previously disclosed the affiant. (DN 99.) Dinh then filed a motion requesting leave to amend his initial disclosures to add the affiant and a response to the motion to strike. (DNs 107, 108, 109.)[1] Campbell, Shrout, and Hunt filed a joint response to Dinh's motion to amend and reply in support of their motion to strike. (DN 111.) As with his discovery motion, Dinh did not file a reply. These motions are ripe for review.

---

[1] Dinh filed two responses to the motion to strike attaching different exhibits to each. (DNs 108, 109.) While the content of the responses is largely overlapping, they are not identical. And while one appears to have formatting errors, there are differences in the content of the filings aside from formatting. There is no explanation in the record for the repetitive filings.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This action relates to the May 18, 2023, closure of Dinh's nail salon by Defendants.[2]  (DN 82.)  Dinh brought this action pursuant to 42 U.S.C. § 1983 alleging that Defendants' actions related to the closure constituted a deprivation of his property without due process of law in violation of the Fourteenth Amendment, was a part of Defendants' pattern and practice of treating Asians differently than their similarly situated white counterparts in violation of the equal protection clause of the Fourteenth Amendment, and violated his right to freedom of speech.  (*Id.*)

Discovery in this matter commenced on August 26, 2024, when the Parties conducted their Rule 26(f) planning meeting.  (DN 29.)  On October 22, 2024, the Court entered a scheduling order requiring the Parties to exchange initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) on or before January 15, 2025; supplement their disclosures and discovery responses pursuant to Fed. R. Civ. P. 26(e) on or before May 30, 2025; and complete all discovery no later than July 31, 2025.  (DN 30.)  The Court's Scheduling Order also required the Parties to contact the undersigned's Chambers to schedule a joint telephonic conference prior to filing any discovery motion.  (*Id.* at PageID # 792 ("No motion pertaining to discovery may be filed without first having a joint telephonic conference with Magistrate Judge Lindsay arranged through his chambers.").)

Dinh served his initial disclosures on January 17, 2025.  (DN 42.)  He listed himself, his wife, Defendants, Margaret Meredith, Tracy Shope, and "[a]ll other" members of the Kentucky Board of Cosmetology ("KBC") as individuals likely to have discoverable information pursuant to Fed. R. Civ. P. 26(a)(1)(A)(i).  (*Id.*)  The Parties took Dinh's deposition on March 17, 2025.

---

[2] Though most of the relevant background herein references the actions of Defendants Shrout, Campbell, and Hunt, there is a fourth Defendant in this action: Jason Back ("Back").  Back has not participated in discovery in this matter due to his position that he has not been properly served.  Motions pertaining to that position are pending before the Court (DNs 88, 105), and nothing in the instant opinion is intended or should be construed as taking any position on the same.  Those motions will be resolved separately.

2

(DN 43; DN 69, at PageID # 1276.)  Thereafter, Defendant Shrout served two sets of written discovery in early April; the first consisted of three interrogatories and four requests for production, and the second consisted of five interrogatories and four requests for production.  (DN 69, at PageID # 1276; DN 69-2; DN 69-3.)  Shrout then spent the next several months trying to get complete, verified responses to those sixteen total discovery requests from Dinh and his counsel.  (DN 69, at PageID # 1276-79; DNs 69-1, 69-4, 69-5, 69-6, 69-7, 69-8, 69-9, 69-10, 69-11.)

The case came before the Court on May 27, 2025, for a telephonic status conference prior to the July discovery deadline.  (DNs 30, 53.)  However, only counsel for Defendants Shrout and Hunt attended that call.  (DN 53.)  During that conference, Shrout's counsel raised the discovery issues she was having with Dinh and his counsel but due to the absence of so many attorneys from the call, the Court elected to reset the matter for an in person conference.  (*Id.*)

That conference was held on June 10, 2025.  (DNs 57, 120.)  The Court expressed concern that this case had not been moving forward.  (DN 120, at PageID # 4438.)  The Court was advised that though the Parties had taken Dinh's deposition, Dinh had not yet served any written discovery or taken any depositions.  (*Id.* at 4440.)  Dinh's counsel indicated that in the related state court action, in response to his discovery requests, Dinh had been told that Shrout would not respond because she was claiming qualified immunity.  (*Id.* at PageID # 4439.)  He also noted that there were pending motions to dismiss in both state and federal court and represented, "I believe that we have been waiting to see who's going to stay in and who's going to be let out and which claims are gonna move forward before we invest time and money and energy into taking more discovery." (*Id.*)  In response, Shrout's counsel stated that this action was separate from the state action and that her client would respond appropriately to discovery served.  (*Id*. at 4440.)  Counsel for

3

Defendants Shrout, Campbell, and Hunt all represented that they did not believe this matter was stayed despite the pending motions to dismiss and that they were moving forward. (*Id.* at 4441-44.) The Court confirmed that unless and until the Court said otherwise, the case was not stayed. (*Id.* at 4447.) The Court then took a recess for the Parties to confer and present a plan for moving the case forward in discovery. (*Id.* at 4449.) Following the recess, the Parties advised that they needed a discovery dispute conference regarding Dinh's responses to Shrout's written discovery, Shrout believed she needed to potentially redepose Dinh and to depose his wife, and Dinh wanted to depose at least Hunt and Shrout though he might want other depositions or written discovery depending on how those depositions went. (*Id.* at 4449, 4451.) The Court set a follow up conference to discuss the dispute between Dinh and Shrout over written discovery to attempt to assist the Parties in finding a compromise, "noted that it expects counsel to progress on discovery from [then] until the telephonic status conference," and extended the discovery and *Daubert*/dispositive motion deadlines by sixty days. (DN 57, at PageID # 1230; DN 120, at PageID # 4449-50, 4454-56.) The discovery deadline was extended to September 29, 2025, and the deadline to file *Daubert* and dispositive motions was extended to December 1, 2025. (DN 57.)

Dinh did not heed the Court's instructions to make progress in discovery between Tuesday, June 10, 2025, and Monday, June 16, 2025. Shrout's counsel e-mailed Dinh's counsel on June 11, June 13, and June 14, 2025, to discuss potential compromises. (DN 69-4.) Her final e-mail affirmed her willingness to accept Dinh's counsel's calls over the weekend in advance of the Monday conference. (*Id.*) Still, Dinh's counsel did not respond to her inquiries until seven minutes before the June 16, 2025, conference. (DN 121, at PageID # 4463.) During the June 16 conference with the Court, Shrout's counsel indicated that there were some discovery requests to which Dinh had not responded fully and some to which his counsel had sworn he would respond but that

counsel would not commit to a deadline for those responses. (*Id.* at 4463-64.)  Dinh's counsel stated in response that, save for one or two areas of disagreement, what he needed was clarity from the Court that the Parties needed to move forward in discovery and having gotten that, he thought the Parties would be able to resolve or narrow their dispute. (*Id.* at 4466-67.)  He identified as areas of potential disagreement (1) Shrout's request for banking records dating back to 2019 and (2) some invoices and contracts that were in possession of a third party. (*Id.* at 4467-70.) Regarding the former, he indicated that he viewed the request as overbroad given that the injury in this case took place in 2019 and that he would like the financial documents to be subject to a protective order so that they could not be used for any purpose other than this case. (*Id.* at 4467-69.)  The Court directed the Parties to confer regarding a potential confidentiality agreement. (*Id.* at 4472-73.)  As to the Parties' dispute about the financial records, while stressing that the Court was happy to address a discovery motion if necessary, the Court stated that it fully expected that the Parties could work that issue out. (*Id.* at 4474.)  The Court stated,

> Not every discovery dispute can be resolved. It's fine -- if we come out of this process and there are still discovery motions for me to rule on, that's fine. I can't stress that enough. All right? But most discovery disputes are amenable to some type of compromise. Some are not. It's very difficult to compromise on attorney-client privilege, for example. Sometimes it's very difficult to compromise on something that's a true trade secret, for example.
>
> Scope of discovery, how many years, which type of bank accounts, that kind of thing is custom-made for a compromise. I don't care what kind of firm you're in or which side of cases you're typically on. Whoever is asking the question has to fight the urge to ask for too much, and whoever is answering the question has to fight the urge to give too little. All right? And so there is almost always compromise available when it comes to scope.
>
> So on this banking issue, I fully expect you-all to be able to work that out. If you can't, you can't. If I need to say, "You need to go back to 2021 but not 2019," that's fine. I will. All right? But just knowing what the big picture problem is, I'm confident in your-all's ability to figure that out.

(*Id.* at 4474.)  The Court also directed Dinh to continue to use reasonable efforts to get the documents from the third party.  (*Id.* at 4476-77.)  The Court cautioned Dinh, who was present in addition to his counsel, about the importance of participating in discovery:

> Absent some specific agreement with the party that sent you the discovery requests, or absent an order from me narrowing it, you've got to answer these questions. And failing to do so and failing to do so completely and in a timely manner will have consequences on your rights in this case. It's got to be done. It will be done. If it's not done, it will harm your position in this case.

(*Id.* at 4471-72.)  Both Dinh himself, who was present for the call, and his counsel indicated they understood the Court's warning.  (*Id.* at 4472.)  The Court's post-conference order directed the Parties to negotiate and execute a confidentiality agreement on or before June 27, 2025; Dinh's counsel to produce adequate responses to all written discovery requests on or before June 30, 2025; Dinh's counsel to use reasonable efforts to obtain the documents from the third party; and the Parties to file a joint status report on or before July 1, 2025, as to whether these items had been accomplished.  (DN 58.)

In their July 1, 2025, Joint Status Report, the Parties stated that Shrout's position was that Dinh had not fully responded to certain written discovery requests and that the Parties were scheduling depositions of Shrout and Hunt.  (DN 61.)  The report also advised that Shrout sought to redepose Dinh and to either depose or obtain documents from Dinh's wife.  (*Id.*)  The same day as the status report was filed, Dinh filed a motion for extension of time to comply with the Court's order to respond to discovery by June 30.  (DN 60.)  He requested through July 10, 2025, to provide complete financial statements to Defendants citing a formatting issue.  (*Id.*)  The Court granted the extension but noted in doing so that the request was filed after the deadline already set by the Court without addressing the excusable neglect standard for requesting permission to do something out of time.  (DN 67.)  Despite granting Dinh relief, the Court's order on his motion stated, "Plaintiff

and his counsel are again cautioned that many aspects of this case have not been conducted in accordance with the Court's rules. Further errors of the type discussed herein will not be lightly tolerated." (*Id.* at PageID # 1266.)

The same day as the Court's order on his extension request was issued, Dinh proceeded to file the instant Motion for Protective Order. (DN 68.) Without providing the text of or a copy of either the discovery request his motion concerned or his response to it, Dinh requested that the Court enter a protective order limiting Shrout's request for financial records to the records he had already produced and relieving him of any obligation to pursue daily banking records from 2019 to the present. (*Id.*) In support, he argued for the first time that Shrout's discovery requests were an escalation and motivated by her counsel's threat "to make Plaintiff's attorney's life 'a living hell' unless and until" Dinh dropped Shrout from the lawsuit. (*Id.* at PageID # 1269; *id.* at 1271 ("Defendant Shrout's discovery requests are designed to harass and burden [Dinh], and fulfill her attorney's threat to make [Dinh]'s attorney's life 'a living hell' unless claims against Defendant were dismissed.").) Despite having indicated during the prior conference with the Court that his objection to Shrout's discovery request was related to the time span of records requested, Dinh in his motion also argued for the first time that Shrout's counsel's insistence that he produce "daily banking records" was objectionable given his prior production of monthly statements. (*Id.* at 1270-71.) He argued that the daily records would be duplicative of the monthly statements he already produced and would require significant effort to redact "hundreds of pages of documents." (*Id.* at 1271.) He also argued that the daily banking records would not yield any additional relevant information. (*Id.*)

In response, Shrout filed her own Motion to Compel requesting that Dinh's motion be denied and that Dinh be ordered to cure deficiencies in his written discovery and to sit for a second

deposition. (DN 69.) Her motion and the attachments to it detailed her counsel's efforts to secure responses from Dinh and his counsel and stated that despite those efforts, Shrout had still not received sufficient responses to four of her written discovery requests, including the request that was the subject of Dinh's Motion for Protective Order. (*Id.* at PageID # 1282-85.) She also requested an additional deposition of Dinh to address inconsistencies between his deposition testimony and his written discovery responses. (*Id.* at 1285-86.) As noted above, Dinh did not file either a response to Shrout's motion (DN 69) or a reply in support of his own Motion for Protective Order (DN 68).

Around the close of fact discovery, the Parties notified the undersigned's Chambers that they had other discovery disputes, and the Court set a call to address them. (DN 86.) During the call, Defendant's Shrout's counsel indicated that there was still further discovery to which Dinh had not responded, and Dinh agreed to produce responses the same week. (DN 87; DN 125.) He stated that the reason for his delay had been ongoing negotiations between counsel as to whether Defendant Shrout could be let out of the case that had ultimately not resolved the issue. (DN 125, at PageID # 4508-09.) The Court and the Parties then discussed an ongoing dispute between them about an affidavit of an individual named Patrick Mason ("Mason") that Dinh's counsel had recently provided to Defendants' counsel. (*Id.* at 4518-26.) Shrout's counsel indicated that Mason had not previously been disclosed by Dinh as an individual with discoverable information and that Mason had been disclosed only three business days before the close of discovery, thus preventing any meaningful opportunity for discovery regarding Mason and his opinions. (*Id.* at 4520-21.) In response to the Court's inquiry about who was attempting to do what with Mason and his affidavit at that point, Dinh's counsel stated,

> Well, I think the appropriate thing to do would be to ask for leave to amend the disclosures, because we did just find him, you know, the last week of discovery. So

as far as not disclosing him prior, it's not something that we even knew about – it's
not someone we even knew about.

(*Id.* at 4525.)  While the Court did not extend the deadline for supplementation, it ordered Dinh's
counsel to "file any appropriate motion regarding the supplementation issue discussed during the
call on or before October 21, 2025."  (DN 87, at PageID # 1684; DN 125, at PageID # 4525-26.)
The Court also indicated that "[i]n light of the pending and anticipated discovery motions, the
current deadline for filing *Daubert*/dispositive motions [wa]s HELD IN ABEYANCE and w[ould]
be reset upon resolution of the current and anticipated discovery motions."  (DN 87.)  October 21,
2025, came and went, and Dinh did not file any motion related to Mason's affidavit.

Notwithstanding the pending discovery motions (DNs 68, 69) and the Court's order (DN
87) holding the deadline for filing them in abeyance pending resolution of the motions, Dinh and
Campbell each proceeded to file dispositive motions on December 1, 2025, the former deadline
for doing so.  (DNs 95, 96.)  Dinh attached Mason's affidavit as an exhibit to his motion.  (DN 95-
26.)  Shortly thereafter, Defendants Campbell, Shrout, and Hunt jointly moved to strike Mason's
affidavit and any references to it in Dinh's dispositive motion; their motion also requested an order
from the Court declaring that Dinh could not use Mason as a witness in this matter.  (DN 99.)  In
support, they noted that Mason was not listed as a witness in Dinh's initial disclosures; Mason's
affidavit was provided to them five days before the September 29, 2025, discovery deadline
expired; they raised this issue with the Court during the October 7 status conference after which
Dinh was set a deadline to file a motion on the issue; and Dinh didn't file any such motion.  (*Id.*)
They argued that Dinh's failure to previously disclose Mason was not substantially justified or
harmless within the meaning of Fed. R. Civ. P. 37.  (*Id.*)

Dinh responded by filing a Motion to Amend Initial Disclosures to Add Witness Patrick
Mason (DN 107) and two responses and objections to the Motion to Strike (DNs 108, 109).  The

content of the three filings largely overlaps. Dinh argued that he "timely" disclosed Mason and

his affidavit prior to the close of discovery and that his failure to do so earlier was substantially

justified or harmless as required by Fed. R. Civ. P. 37(c)(1). (DNs 107, 108, 109.) He also argued

that "good cause" existed pursuant to Fed. R. Civ. P. 16(b)(4) given his prior diligence in discovery

to justify allowing his late amendment of his initial disclosures. (DN 107, at PageID # 4076.) But

notably absent from his filings was any true explanation for the timing of his disclosure of Mason.

He stated in each filing that he discovered Mason near the end of the discovery period in September

2025 and that he notified Defendants of Mason's existence and anticipated testimony as soon as

he was identified. (DN 107, at PageID # 4071; DN 108, at PageID # 4091, 4097; DN 109, at

PageID # 4108, 4114.) But he did not provide any details regarding why he only discovered Mason

near the end of the discovery period or how Mason came to his attention.

Defendants Campbell, Shrout, and Hunt filed a combined response to Dinh's Motion to

Amend (DN 107) and reply in support of their own motion to strike. (DN 111.) Defendants

emphasized that Dinh's disclosure of Mason was made at 6:23 PM on September 24, 2025, three

business days before the close of discovery. (*Id.* at PageID # 4129.) They emphasized that Dinh

did not comply with the Court's Order directing him to address Mason's disclosure via any

appropriate motion on or before October 21, 2025, and that none of his filings offered an

explanation for missing the deadline set by the Court. (*Id.*) Defendants argued that the proper

standard for consideration of Dinh's motion was that of excusable neglect, not good cause, and

that Dinh could not meet that standard. (*Id.* at 4132.) Dinh did not file a reply in support of his

Motion to Amend (DN 107).

Despite the pendency of these discovery disputes, several dispositive motions have either

been fully briefed or are in the process of being full briefed for the Court's consideration, including

Dinh's Motion for Summary Judgment (DN 95), Shrout's Motion for Summary Judgment (DN 101), Hunt's Motion for Summary Judgment (DN 103), Hunt's Motion to Dismiss (DN 89), Campbell's Motion for Summary Judgment (DN 96), Back's Motion for Reconsideration (DN 88), and Back's Motion to Strike (DN 105). The motions by Back relate to his position that he has never been properly served with process in this action and are not relevant to the instant discovery disputes.

With this detailed procedural history in mind, the Court will now address the pending discovery motions below.

## II.   DISCUSSION

### A.   Dinh's Motion for Protective Order (DN 68) and Shrout's Motion to Compel (DN 69)

As noted above, Dinh moved for a protective order as to Shrout's request for "daily banking records" and Shrout moved to compel Dinh to provide complete responses to her First Set of Discovery Interrogatory No. 3 and Request for Production Nos. 3 and 4 and Second Set of Discovery Interrogatory No. 3 as well as to sit for a second deposition. (DNs 68, 69.) Because Dinh did not respond to Shrout's Motion to Compel (DN 69), the Court will grant the same without further analysis as to her First Set of Discovery Interrogatory No. 3, Second Set of Discovery Interrogatory No. 3, and request that Dinh sit for a second deposition. Though it is somewhat unclear given that Dinh did not specify which requests were are issue in his Motion for Protective Order (DN 68), based on the documents provided by Shrout, it appears his motion relates to Shrout's First Set of Discovery Request for Production Nos. 3 and 4. Those requests were as follows:

> 3. Please produce complete banking records for the Tippi Nail Lounge, including checking accounts, savings accounts, and any other bank accounts. This

request includes, but is not limited to, the salon's account from PNC Bank and the account at Independence Bank.

4. Pleas[e] produce complete banking and investment records for Plaintiff, including, but not limited to, checking accounts, savings accounts, IRA, 401(k), or stock/cryptocurrency trading accounts, from 2019 through the present.

(DN 69-2, at PageID # 1300.)  Dinh's motion states that he produced monthly statements for his personal and business checking accounts, monthly and yearly statements from his investment account, tax returns from 2019 to the present, and all pay check stubs and 1099s from May 2023 to present.  (DN 68, at PageID # 1270.)  Dinh requested that he be relieved of the obligation to produce "daily banking records."  (*Id.*)  He argued that the information in the daily records was duplicative of the monthly statements he provided, producing the records would be burdensome because it would require him to individually redact "hundreds of pages of documents," and that the requests were designed to "harass and burden" him.  (DN 68, at PageID # 1271.)  Shrout responded that the daily records would "provide details about the amounts paid and received, as well as confirming the payors' identifies," information she claimed she needed to determine "whether the Tippi Nail Lounge's alleged profits arose from nail technician services versus other sources, such as bank loans or gifts from relatives."  (*Id.* at PageID # 1283-84.)  She indicated that the daily records would also permit her to "confirm that [Dinh's] tax filings accurately reflect his state income for the years in question."  (*Id.* at 1284.)  Shrout stated that these questions are relevant to determining Dinh's compensatory damages.  (*Id.*)  She also indicated that the records could be included in the Parties' confidentiality agreement to avoid the need for redaction.  (*Id.*)  Regarding Dinh's claim of harassment and threats by counsel to make Dinh's counsel's life "a living hell," Shrout responded,

Mr. Dinh's repeated citations to an alleged remark made by unnamed defense counsel appears to refer to a verbal conversation between Ms. Shrout's attorney, Jacob C. Walbourn, and David Borum, counsel for the plaintiff. Although

recollections may vary regarding the veracity of the statement attributed to Mr. Walbourn, it is undisputed that the attorneys' conversation did not concern the case at bar. Instead, Mr. Walbourn and Mr. Borum only discussed a related matter filed in state court, captioned *Tippi Nail Lounge, et al. v. Kentucky Board of Cosmetology, et al.*, No. 24-CI-461 (Franklin Circuit Court).

(*Id.* at 1283 n.1.)  Walbourn moved to withdraw as counsel of record for Shrout the same day Shrout's Motion to Compel was filed, and the Court granted that motion.  (DNs 69, 70, 71.)

While Fed. R. Civ. P. 26(c) and 37 allow a party to move for an order compelling disclosure or discovery and for a protective order under appropriate circumstances, prior to doing so, parties are required to confer in good faith in an attempt to resolve their discovery dispute without Court intervention.  Fed. R. Civ. P. 26(c)(1) ("The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action."); Fed. R. Civ. P. 37(a)(1) ("The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.").  The Court's Local Rules expand upon these requirements, stating:

> Prior to filing a discovery motion, all counsel must make a good faith effort to resolve extrajudicially any dispute relating to discovery. The Court will not entertain discovery motions unless counsel have conferred -- or attempted to confer -- with other affected parties in an effort to resolve their dispute. The moving party must attach to every discovery motion a certification that counsel have conferred and are unable to resolve their differences. The certification must detail counsel's attempts to resolve the dispute.

LR 37.1.

The Court begins its analysis of the remaining area of dispute by noting that Dinh's Motion for Protective Order (DN 68) does not comply with these requirements.  Nowhere in his motion does he detail the efforts his counsel made to attempt to resolve the dispute extrajudicially. As noted above, his motion does not even attach the text of the discovery request or response at issue,

let alone any correspondence between counsel evidencing a meaningful meet-and-confer. This absence is fatal to his request before the Court even reaches the merits of his argument. This absence is particularly troubling given that the Court's Scheduling Order in this case requires the Parties to have a conference with the undersigned Magistrate Judge prior to filing any discovery motion, a practice the Court explicitly explained to the Parties was designed to help them reach agreement on areas amenable to compromise. The Court even had a conference requested by Defendant Shrout about Dinh's failure to respond to discovery at which the dispute about the very records Dinh now asks the Court not to make him produce was discussed. At no point during that conference did Dinh's counsel raise the concerns now presented in his motion about the duplicative nature of the discovery requested or the fact that he believed the request to be motivated by animus on the part of defense counsel. This undermines the legitimacy of his position and leads the Court to question whether Dinh truly complied with the requirements of the Court's Scheduling Order (DN 30) prior to filing his motion.

While Shrout's motion included a statement that she "repeatedly conferred in good faith with" opposing counsel, the substance of her filings and the communications between the Parties she provided do not support that she complied with LR 37.1 and Fed. R. Civ. P. 37(c)(1) either. During the June 16 conference, the Court explicitly told the Parties that it believed they could work out any dispute regarding the financial records, going into detail about what such efforts should entail. (DN 121, at PageID # 4474.) But the correspondence between the Parties' counsel provided by Defendant Shrout that followed the Court's June 16 conference and instruction to the Parties to meet and confer demonstrates that less than meaningful efforts were made on both sides to attempt to narrow the dispute prior to presenting the same to the Court via motion. (DNs 69-5, 69-6, 69-7.) The letter from Shrout's counsel to Dinh's counsel dated June 17, 2025, the day after the

conference, referenced a June 16 phone conference between counsel as part of which Shrout's counsel stated that "the time for compromise discussions had ended after the June 16 conference" and Dinh's counsel stated, "If you don't like it, you can file a Motion to Compel." (DN 69-5, at 1310-11.) In a June 30, 2025, e-mail, Dinh's counsel noted that his client objected to any request for "complete banking records" as "unduly burdensome, given that we have already provided monthly bank statements from January 2021 to the present." (DN 69-6, at PageID # 1315.) Dinh's counsel also stated, "The process of downloading and redacting daily banking activity for an undefined scope of time is unduly burdensome and not proportional to the needs of this case." (*Id.* at 1315-16.) Dinh's counsel referenced these same objections in a June 27, 2025, e-mail to which Shrout's counsel responded by reasserting her position that the request was relevant given the amount of damages sought by Dinh. (DN 69-7.) These e-mails provide little in the way of engagement about the issues and instead the Parties merely repeated their legal positions. As the undersigned has said before, "Exchanging one-sided demands that the other party acquiesce to one's legal position without any dialogue between the Parties regarding whether there is room to compromise is not the type of meet and confer contemplated by the language of the rules cited above." *HBTPower Ltd. v. Mohawk Energy, LLC*, No. 3:23-CV-00628-CHB-CHL, 2024 WL 5440861, at *2 (W.D. Ky. Nov. 22, 2024). Nowhere in these emails is the position now taken by Shrout in her motion regarding using the Parties' confidentiality agreement to solve Dinh's concern about redaction, nor is there any indication that her counsel suggested to Dinh's counsel that "[m]ost banks will produce financial records free of charge to their clients" as she asserted in her motion to compel. (DN 69, at PageID # 1284.) These are exactly the types of suggestions that it would have benefited the Parties to discuss prior to engaging in motion practice instead of merely demanding the opposing party concede the wrongness of its legal argument.

15

Given that it does not appear that the Parties meaningfully attempted to reach a compromise on the issue of the banking records at issue as required, the Court will deny both Dinh's Motion for Protective Order (DN 68) and Shrout's Motion to Compel (DN 69) as to Shrout's Request for Production Nos. 3 and 4 above.

### B.     Motion to Strike (DN 99) and Motion to Amend Initial Disclosures (DN 107)

As set forth above, also pending before the Court are the Parties' competing requests regarding Dinh's disclosure and use of the affidavit of Mason. Defendants Campbell, Shrout, and Hunt moved to strike that affidavit attached as an exhibit to Dinh's Motion for Summary Judgment (DN 95) and to prevent Dinh from using Mason as a witness in this matter. (DN 99.) Dinh sought leave to amend his initial disclosures to add Mason as a witness. (DN 107.) Two sources of legal authority are relevant to these competing requests.

First, Fed. R. Civ. P. 6(b) applies to the timeliness of Dinh's motion. After the Parties raised the issue of the timing of the disclosure by Dinh of Mason and his affidavit, the Court explicitly directed Dinh's counsel to file "any appropriate motion regarding the supplementation issue discussed during the call on or before October 21, 2025." (DN 87 (emphasis omitted).) Dinh did not do so as required. Instead, on December 25, 2025, he filed his Motion to Amend Initial Disclosures to Add Witness Patrick Mason (DN 107) without requesting leave from the Court to do so after the expiration of the deadline the Court set to file that motion. The motion argued that "[w]hen a party seeks to amend its disclosures after the expiration of scheduling order deadlines, it must show 'good cause' under Rule 16(b)," (DN 107, at PageID # 4074), but Rule 16(b) does not provide the applicable standard here.[3] Pursuant to Fed. R. Civ. P. 6(b)(1), the court may for

---

[3] The cases cited by Dinh in support of his assertion that Fed. R. Civ. P. 16(b)'s "good cause" standard applies are distinguishable. In *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 879 (6th Cir. 2020), cited by Dinh, the Sixth Circuit stated that Rule 16's "good cause" standard applied "when a party seeks to amend its pleadings or join additional defendants after the expiration of scheduling order deadlines." Dinh's initial disclosures are not pleadings, *see* Fed.

good cause extend the time to do an act if the request is made before the original time to do the act expires. Fed. R. Civ. P. 6(b)(1). However, if the time to act has expired, the party must file a motion demonstrating that it failed to act because of excusable neglect. *Id.* at 6(b)(1)(B). In evaluating whether a party has shown excusable neglect, the Court must balance five factors: "(1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith." *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). This standard applies to situations where "a party moves the court to accept a filing after the relevant deadline." *Id.* Nowhere does Dinh attempt to show excusable neglect for his failure to comply with the deadline set by the Court, and based upon the facts presently before the Court, it does not appear likely he can do so.

Considering the relevant excusable neglect factors, the Court concludes there is no basis for excusing Dinh's compliance with the Court's October 9, 2025, Order (DN 87) setting him a deadline to file his supplementation motion. As to the first factor, the danger of prejudice to the nonmoving party, because Dinh waited to file his motion until after the close of discovery and after he filed his dispositive motion, Dinh's conduct has prejudiced Defendants Shrout, Campbell, and Hunt because they had no ability or time to investigate the new facts injected into this litigation. As to the second factor regarding the length of the delay and its potential impact on judicial proceedings, Dinh waited nearly sixty days to file his motion and did not do so until after

---

R. Civ. P. 7(a) (defining pleadings), and he is not seeking to add any defendants to this action. In *Marcilis v. Twp. of Redford*, 693 F.3d 589, 597 (6th Cir. 2012), also cited by Dinh, the Sixth Circuit was reviewing the district court's denial of a "motion for a sixty day adjournment of the scheduling order." Dinh seeks no such adjournment here.

he had filed his dispositive motion.  Again, this substantially disrupts the ability of Defendants Shrout, Campbell, and Hunt to defend themselves and the Court's ability to ensure that any decision on dispositive motions is based upon an adequately developed record.  As to the third factor regarding the reason for the delay, Dinh's filings offer no reason for his noncompliance with the Court's deadline.  While Dinh did not address the excusable neglect standard in either his Motion to Amend Initial Disclosures (DN 107) or response to Defendants' Motion to Strike (DNs 108, 109), Defendants Campbell, Shrout, and Hunt argued that standard should apply in their combined response and reply (DN 111).  Dinh did not file a reply in support of his motion to amend, which would have been the logical place for him to either address or contest the applicability of the excusable neglect standard.  His failure to do so does not assist him in the Court's analysis of whether he has shown excusable neglect.  As to the fourth factor, whether the delay was within the reasonable control of the moving party, the Court has no reason to conclude that delay was not within Dinh's control.  In particular, if Dinh was able to prepare and file his thirty-two page dispositive motion supported by twenty-eight exhibits (DN 95), the Court sees no reason why he could not have filed his motion to amend either by the Court's deadline or earlier than he did.  The final factor regarding good faith, the Court concludes, is neutral in this analysis because Dinh's conduct appears akin to negligence and the Court lacks any evidence of bad faith behavior.  For all these reasons, the Court concludes that Dinh has not shown he failed to file his motion due to excusable neglect, which is an independent basis for denial of his motion (DN 107).

But because Defendants Shrout, Campbell, and Hunt have independently moved to strike Mason as a witness due to Dinh's untimely disclosure, Fed. R. Civ. P. 37(c) is also implicated. Pursuant to Fed. R. Civ. P. 37(c)(1), "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to

supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In *Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015), the Sixth Circuit adopted a five factor test for assessing whether a late or omitted disclosure is substantially justified or harmless. The Court should consider

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Id.* (quoting *Russell v. Absolute Collection Servs., Inc.,* 763 F.3d 385, 396-97 (4th Cir. 2014)).

Dinh did fail to identify Mason in accordance with Fed. R. Civ. P. 26(a) and (e). Fed. R. Civ. P. 26(a)(1)(A)(i) requires a party to disclose—without awaiting a discovery request—the name, address, and telephone number of any "individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i). Fed. R. Civ. P. 26(e) requires a party who has made Rule 26(a) disclosures to

> supplement or correct its disclosure . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[ ] or [ ] as ordered by the court.

Fed. R. Civ. P. 26(e)(1).[4] "The duty to supplement under Rule 26(e) is designed to prevent a party from surprising his adversary in setting forth new facts not disclosed during discovery in sufficient time to adequately respond to them." *Matilla v. S. Kentucky Rural Elec. Co-op. Corp.*, No. CIV.A. 6:04-380-DCR, 2006 WL 7128675, at *3 (E.D. Ky. Jan. 20, 2006). Given this purpose, the Court cannot conclude that Dinh's Wednesday, September 24, 2025, disclosure a mere three business days before the close of fact discovery on Monday, September 29, 2025, was timely. Disclosure

---

[4] Though the Court set an initial supplementation deadline for May 30, 2025, it did not subsequently extend that deadline to match other extensions to the schedule. Accordingly, the timeliness of Dinh's disclosures is governed by Rule 26(e)(1)(A).

in such close proximity to the discovery deadline was tantamount to a disclosure after the deadline because Dinh effectively eliminated the ability of Defendants Shrout, Hunt, and Campbell to take any discovery regarding Mason. Any discovery requests served upon Dinh regarding Mason at that time would have been untimely. *See Sullivan v. Fam. Dollar Stores, Inc.*, No. 3:19-CV-00846-DJH, 2021 WL 6882418, at *2 (W.D. Ky. Oct. 7, 2021) (collecting cases to support the proposition that "[d]istrict Courts within the Sixth Circuit have interpreted [ ] Rules [33, 34, and 36] to require that, when a court-ordered discovery deadline is in place, discovery requests 'must be served at least thirty days prior to a completion of discovery deadline.' "). Any suggestion that three business days left Defendants Shrout, Hunt, and Campbell with sufficient time to attempt to conduct third party discovery is similarly untenable. *See* Fed. R. Civ. P. 45(d)(3)(A)(i) (allowing a court to quash or modify a subpoena that fails to allow a reasonable time to comply). This left Defendants Shrout, Hunt, and Campbell with have no mechanism to find out additional information regarding Mason—whose existence and testimony had not previously come up in discovery—without seeking leave from the Court to take discovery outside the discovery period, leave which they did not know would be granted. Thus, the Court concludes that Dinh's disclosure of Mason was not timely within the meaning of Fed. R. Civ. P. 26(a) and (e).

Having concluded that Dinh failed to provide information about Mason in accordance with Fed. R. Civ. P. 26(a) and (e), the Court must now address the application of the *Howe* factors. Here, the Court finds that these factors weigh in favor of excluding Mason and his affidavit. As to the first factor, the surprise to the party against whom the evidence would be offered, and the second factor, ability to cure any surprise, the Court finds that Dinh's conduct did surprise Defendants Shrout, Hunt, and Campbell. In particular, the Court applies the same reasoning above for why Dinh's disclosure untimely to the question of surprise. Further, given the fact that Dinh

did not timely comply with the Court's deadline for addressing the untimely disclosure and proceeded to attempt to use Mason's affidavit in his dispositive motion without seeking leave of Court, Defendants Shrout, Hunt, and Campbell were subject to additional surprise they could not cure.  When Dinh did not seek leave to supplement his disclosures by the October 21 deadline set by the Court, it was reasonable for Defendants Shrout, Hunt, and Campbell to construe that as a lack of intention by Dinh to persist in his efforts to use Mason and his testimony. These factors weigh against a finding that Dinh's late disclosure was substantially justified and/or harmless.

As to the third factor, the extent to which allowing the evidence would disrupt the trial, this factor weighs in favor of a finding that the late disclosure was harmless because no trial date has yet been set in this matter.

As to the fourth factor, the importance of the evidence, Dinh contended that the evidence was important because it was direct evidence of Defendant Campbell's racial animus in support of his equal protection claim.  (DN 107, at PageID # 4075.)  Defendants Campbell, Shrout, and Hunt argued in response that Mason and his testimony were "*de minimus* at best" and they also argued that the evidence was impermissible character evidence under Fed. R. Evid. 404(a).  (DN 111, at PageID # 4139-40.)  The Court concludes this factor is at best neutral because there is dispute about the extent to which Mason's testimony is important in this matter.

The final factor, the nondisclosing party's explanation for its failure to disclose the evidence, is the most significant to the Court's analysis here.  In his own motion under the heading "Explanation for the Failure to Disclose," Dinh stated, "Plaintiff's failure to formally amend the initial disclosures is an honest oversight rather than a strategic decision or bad faith action.  The fact that Plaintiff informed Defendants about Mason during the discovery period demonstrates good faith and an attempt to comply with the spirit of the disclosure rules."  (DN 107, at PageID

# 4076.)  In his responses to the Motion to Strike (DN 99), Dinh represented "Plaintiff promptly shared Mason's affidavit with Defendants as soon as he was identified, demonstrating a good faith effort to provide the information to the opposing party."  (DN 109, at PageID # 4114; *see also* DN 108, at PageID # 4097.)  These conclusory statements are an insufficient explanation for the prior failure to disclose and do not answer fundamental questions regarding when Dinh learned of Mason in the discovery period and why Dinh only learned of Mason at that time.  Without these facts and given Dinh's prior conduct in this case, the Court has sufficient reason for concern that the true explanation is that Dinh's counsel did not diligently pursue discovery.  Discovery in this matter began on August 26, 2024.  (DN 29.)  The Court initially set a discovery deadline of July 31, 2025, such that the Parties had approximately eleven months to take discovery.  (DN 30.)  Dinh's counsel did not appear for the Court's May 27, 2025, call.  (DN 53.)  Then, during the Court's June 10, 2025, status conference, the Court was advised that Dinh had not yet served any written discovery or taken any depositions.  (DN 120, at PageID # 4440.)  While Dinh's counsel said during that conference that was due in part to waiting on a ruling on the motions to dismiss that were pending in this action and the related state action, no order was ever entered staying this case and no independent motion requesting a stay pending a ruling on the motion to dismiss was ever filed.  Thus, the reasonableness of Dinh's lack of conducting any discovery throughout the first nine months of the eleven month discovery period is questionable.  Dinh then failed to confer with defense counsel in advance of the June 16 conference as ordered by the Court and failed to provide complete discovery responses on or before June 30, 2025, filing a late motion requesting extension of that deadline.  (DN 60.)  While the Court granted relief, the Court did so with an explicit warning to avoid further noncompliance with Court rules.  (DN 67.)  Dinh then filed the Motion for Protective Order (DN 68) discussed at length above that did not comply with the

procedural requirements for filing it.  Then Dinh failed to produce additional discovery to Shrout and waited to make a commitment to doing so until during the October 7 conference with the Court.  These facts all suggest a lack of diligence and attention to the case that combined with the lack of any explanation as to why Mason and his affidavit were only discovered and disclosed three business days before the close of discovery lead the Court to conclude that Dinh did not diligently pursue discovery in this matter.  Thus, the final *Howe* factor weighs against a finding that the untimely disclosure was substantially justified or harmless.

For all these reasons, the Court concludes Dinh's untimely disclosures was not substantially justified or harmless.  The Court will deny Dinh's Motion to Amend (DN 107), grant Defendants' Motion to Strike (DN 99), and order that Mason not be used as a witness in this matter.

### C.    Timing of Discovery

These rulings lead the Court to a concern about the present state of the Court's docket.  As noted herein, against the backdrop of these discovery motions—and the Court's order (DN 87) holding the deadline for filing them in abeyance pending resolution of the pending discovery disputes—Dinh, Shrout, Hunt, and Cambell each filed dispositive motions of their own.  (DNs 95, 96, 101, 103.)  Some of these motions are fully briefed, and some await the Court's instant ruling.  (DN 117.)  However, in the instant opinion, the Court has permitted some additional discovery including an additional deposition of Dinh, which leads the Court to question whether the dispositive motions pending before the Court are truly based upon a complete record.  Therefore, the Court will set this matter for a telephonic status conference as set forth below to discuss whether any of the motions should be withdrawn and refiled after the completion of the additional discovery authorized herein or whether the discovery permitted can be completed following any ruling on the pending dispositive motions.

III.    **ORDER**

For the reasons set forth above, IT IS HEREBY ORDERED as follows:

(1)    Dinh's Motion for Protective Order (DN 68) is **DENIED**.

(2)    Shrout's Motion to Compel (DN 69) is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted as to her First Set of Discovery Interrogatory No. 3, Second Set of Discovery Interrogatory No. 3, and request that Dinh sit for a second deposition and denied in all other respects.

(3)    The Motion to Strike (DN 99) filed by Defendants Shrout, Campbell, and Hunt is **GRANTED**. Plaintiff Dinh is not permitted to utilize Mason as a witness in this matter. On or before **March 9, 2026**, Dinh shall file with the Court an amended copy of Exhibit AA to his summary judgment motion that does not include Mason's affidavit and a version of his motion itself that removes any reference to Mason's affidavit.

(4)    Dinh's Motion to Amend Initial Disclosures (DN 107) is **DENIED**.

(5)    This matter is set for a telephonic status conference before the undersigned on **March 5, 2026, at 10:30 AM ET**.[5] Counsel for the Parties shall connect to the conference by dialing 1-650-479-3207 and entering access code 2319 759 1660.

---

[5] Counsel is advised that the Court is setting this conference telephonically as a convenience to and cost-saving measure for the Parties. But the telephonic conference is still a court proceeding for which the Court expects counsel to appear on time. Counsel is cautioned that non-appearance may result in the proceeding being rescheduled for an in-person conference that client representatives must attend and/or the issuance of sanctions pursuant to Fed. R. Civ. P. 16(f).

Attendees should press # to skip entry of an attendee or host code.  Counsel shall

be prepared to address the issue set forth in Section II(C) above.

Colin H Lindsay, Magistrate Judge

United States District Court

cc:  Counsel of record

February 25, 2026